**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 2 6 2016

JAMES W. McCORMACK, CLERK
By: _____
                              DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

JAMES MOORE, on behalf of himself
and all similarly situated persons and
entities,

      *Plaintiff,*

v.

MACK'S SPORT SHOP, LLLP D/B/A
MACK'S PRAIRIE WINGS, LLLP,
AND YETI COOLERS, LLC,

      *Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 4:16 W 540-KGB

[Removed from the Circuit Court of
Pope County, Arkansas, Civil Division
4, Case No. CV-2015-110]

This case assigned to District Judge Baker
and to Magistrate Judge Kearney

---

### YETI COOLERS, LLC's NOTICE OF REMOVAL OF CIVIL ACTION

---

Under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, Defendant YETI

Coolers LLC ("Yeti") files this Notice of Removal of the civil action brought against it by

Plaintiff James Moore in the Pope County, Arkansas Circuit Court.

### I.    INTRODUCTION

1.    On April 16, 2015, Plaintiff James Moore ("Plaintiff") filed a putative class

action on behalf of himself and similarly situated persons and entities against Mack's

Sport Shop, LLLP d/b/a Mack's Prairie Wings, LLLP.

2.    On June 23, 2016, Plaintiff filed his First Amended Complaint

("Complaint") and, for the first time, named Yeti as a Defendant. Summons and other

papers were served on Yeti on June 28, 2016. This removal is timely filed under 28

U.S.C. § 1446(b)(1) because Yeti filed this notice within 30 days after receiving service of

the Summons and Complaint. 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe*

*Stringing*, 526 U.S. 344, 347-348 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint . . . after and apart from the service of the summons").

3.      Yeti's time to respond to the First Amended Complaint has not expired and Yeti has not yet served or filed a response to the Complaint.

## II.      PLAINTIFF'S ALLEGATIONS

4.      This case involves allegedly defective Yeti coolers, including but not limited to model numbers YT35, YT45, YT50, YT65, YT75, YT85, YT105, YT120, YT155, and YT250 purchased by Plaintiff and the putative class. (Complaint ¶ 12). Plaintiff claims that Defendants "intentionally failed to advise their customers" that "Defendants misrepresent the volume of Yeti coolers." (Complaint ¶ 32).

5.      The putative class comprises "[a]ll Arkansas consumers and entities, including Plaintiff and all similarly situated persons for the period from April 15, 2009 to present [] who purchased a Yeti cooler from the Defendant Mack's, either at a Mack's retail store or over the internet." (Complaint ¶ 21). Plaintiff also seeks equitable relief barring Yeti from selling its products marked with allegedly incorrect volumes to all consumers in Arkansas. (Complaint ¶ 26).

6.      The Plaintiff, on his behalf and on behalf of the putative class he seeks to represent, asserts claims for violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"), fraud, unjust enrichment, negligence/gross negligence, breach of contract, breach of express warranties, breach of implied warranty of merchantability, and breach of implied warranty to conform with the usage of trade. Plaintiff seeks

compensatory damages, restitution, reasonable attorneys' fees and costs, equitable and injunctive relief against future unfair trade practices, and "such further relief as the Court may deem just and proper." (Complaint, Prayer for Relief ¶¶ 2-3, 6-7).

### III.   BASIS FOR REMOVAL

7.    The Court has original jurisdiction over the instant action under the Class Action Fairness Act ("CAFA"), codified in at 28 U.S.C. § 1332, 28 U.S.C. § 1441 (a) and (b), and 28 U.S.C. § 1453, because this is a putative class action with over 100 putative class members seeking to recover damages potentially over $5,000,000.00, and there is minimal diversity. This case is removable under 28 U.S.C. § 1441(a).

#### A.   Putative Class Consists of More than 100 Members

8.    Plaintiff seeks to represent "[a]ll Arkansas consumers and entities, including Plaintiff and all similarly situated persons for the period from April 15, 2009 to present [] who purchased a Yeti cooler from the Defendant Mack's, either at a Mack's retail store or over the internet." (Complaint ¶ 21). Yeti has sold thousands of hard coolers to Mack's since April 15, 2009. *See* Declaration of Allison Louviere attached herewith as Exhibit A ("Louviere Decl."), at ¶ 6. The class size requirement for CAFA jurisdiction is therefore easily satisfied.

#### B.   Minimal Diversity Exists

9.    The second CAFA requirement is minimal diversity—at least one putative class member must be a citizen of a different state than one defendant. 28 U.S.C. §1332(d)(2).

10.     Plaintiff Moore was and is a resident and a citizen of the State of Arkansas. (Complaint ¶ 7). Defendant Yeti was and is incorporated under the laws of the State of Delaware with its principle place of business in Dallas, Texas. (Complaint ¶ 9). Because Plaintiff is diverse from Defendant Yeti, CAFA's minimal diversity requirement is satisfied.

C.     **The Complaint Places More than $5 Million in Controversy**

11.     Plaintiff has put well over $5 million in controversy, and he knows it. He attempts to get around this by "waiving any right to any amount in controversy which exceeds $5 million, including compensatory damages, restitution, injunctive relief, interest, costs, and attorney's fees." (Complaint ¶ 6). This stipulation does not affect Yeti's ability to remove this case. In *Standard Fire Insurance Co. v. Knowles*, the Supreme Court of the United States unanimously concluded that class counsel cannot avoid removal through a precertification stipulation purporting to limit damages to less than the federal jurisdictional amount. 568 U.S. ----, ---, 133 S. Ct. 1345, 1347, 185 L. Ed. 2d 439 (2013).

12.     "[A] party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence *regardless of whether the complaint alleges an amount below the jurisdictional minimum*." *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir.2009) (emphasis added). In analyzing the amount in controversy, the question is "not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are. . . ." *Id.* at 959 (emphasis original) (internal citations and quotations omitted); *see also Jarrett v. Panasonic Corp. of N. Am.*, 934 F.

-4-

Supp. 2d 1020, 1023 (E.D. Ark. 2013) (denying motion for remand because Defendant failed to establish to a "legal certainty" that damages could not conceivably exceed $5 million). If the defendant "prove[s] by a preponderance of the evidence that the amount in controversy is satisfied, remand is only appropriate if [the plaintiff] can establish that it is legally impossible to recover in excess of the jurisdictional minimum." *Bell*, 557 F.3d at 959.

13.     CAFA provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or the value of $5,000,000.00, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

14.     In the Prayer for Relief, Plaintiff seeks: (1) compensatory damages *and/or* restitution; (2) reasonable attorneys' fees and costs; (3) pre-and post-judgment interest; (4) a constructive trust for the benefit of the Plaintiff and Class Members; (5) an injunction prohibiting Defendants from "further engaging in the unlawful practices" outlined in the Complaint; and (6) "such further relief as the Court may deem just and proper." (Complaint Prayer for Relief).

15.     <u>Compensatory Damages</u>: Plaintiff asserts that he and his fellow class members are entitled to "rescission of their payment for every Yeti Cooler sold." (Complaint ¶ 36). In other words, Plaintiff seeks to recover every dollar spent by class members at Mack's on Yeti coolers since April 15, 2009, including tax.

16.     Yeti has determined that since April 15, 2009, Mack's has purchased $1,007,437 of allegedly actionable coolers from Yeti at wholesale prices. *See* Exhibit A (Louviere Decl.), ¶ 7. During this same period, Yeti has determined that its sales of

allegedly actionable coolers to entities and/or residents of Arkansas during the class period equal $14,226,468. *Id.* at ¶ 8.

17.    Plaintiff purports to represent consumers who purchased Yeti products at Mack's, meaning the vast majority of class members paid retail (as opposed to wholesale) prices for their allegedly actionable coolers. *Id.* at ¶ 9. Mack's typically offers Yeti products at around a 35% markup from the wholesale price it paid Yeti for the coolers. *Id.* at ¶ 9. Conservatively, this means that the pre-tax retail value of the inventory sold to Mack's by Yeti since April 15, 2009 is at least $1,549,903.[1] *Id.* at ¶ 10. Similarly, the *pre-tax* retail value of inventory sold by Yeti to customers in Arkansas during the class period is $21,886,873.84.[2] After applying Arkansas' sales tax of 6.5%, these figures jump to roughly $1,650,646.69[3] and $23,309,520.60[4] respectively.

18.    From the above, it follows that if Plaintiff were to recover all of the compensatory damages he seeks, he would recover at least $1,448,442.55.

19.    <u>Punitive Damages</u>: "It is well settled that punitive damages must be considered in determining the amount in controversy." *See Allison v. Sec. Benefit Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992).

20.    While Plaintiff did not affirmatively request punitive damages in his Complaint, federal courts applying Arkansas law have held that punitive damages are

---

[1] $1,007,437/ (1-.35) = $1,549,903.

[2] $14,226,468/ + (1-.35) = $21,886,873.84.

[3] $1,549,903 + ($1,549,903(.065)) = $1,650,646.69.

[4] $21,886,873.84 + ($21,886,873.84(.065)) = $23,309,520.60.

"assumed to be legally recoverable even [where a] plaintiff's complaint [does] not include a prayer for punitive damages or allege that the defendant acted wantonly or maliciously." *Doss v. Am. Family Home Ins. Co.*, 47 F. Supp. 3d 836, 841 (W.D. Ark. 2014); *see also Bowles v. Osmose Utils. Servs., Inc.*, 443 F.3d 671, 675 (8th Cir. 2006); *Thatcher v. Hanover Ins. Grp., Inc.*, 4:10–CV–4172, 2012 WL 1933079, at *6 (W.D. Ark. May 29, 2012) ("[T]here have been cases in which punitive damages have been properly awarded when merited even in the absence of their being sought after or prayed for by a party.").

21.     Under Arkansas law, to recover punitive damages, a plaintiff must show that a defendant (1) is liable for compensatory damages, and (2) either "defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred; or *[t]he defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.*" Ark. Code Ann. § 16-55-206 (emphasis added). Generally, punitive damages are recoverable where the underlying damages arose from tort or fraud claims. *See Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 785 (8th Cir. 2010) (applying Arkansas law and noting that punitive damages "are particularly appropriate in cases involving fraud").

22.     Here, Plaintiff has asserted fraud (Count II). To support this count, Plaintiff repeatedly alleges that Defendants' intentionally deceived consumers:

- The Defendants have defrauded the consumers by advertising the Yeti coolers volume to be larger than actual size. (Complaint ¶19).

- Defendants, as part of their regular and intended practice, knew that its customers were unaware of the fact that Defendants misrepresented the volume of Yeti coolers in violation of Arkansas law. Defendants intentionally failed to advise their customers of these facts. (Complaint ¶ 32).

- Defendants conduct…was a regular and intended business practice of Defendant, instituted and implemented with a view towards unfairly profiting at the expense of its customers. (Complaint ¶ 33).

- Defendants know that the misrepresentations are false or has reckless disregard for the truth or falsity of the representations due to Defendants' extensive knowledge and experience in the retail sale industry. (Complaint ¶ 40).

23.    Yeti denies engaging in any conduct that would give rise to punitive damages and denies that Plaintiffs may recover punitive damages, but Plaintiff's allegations constitute conduct that, if proven in accordance with applicable law, could lead to an award of punitive damages. *See* Ark. Code Ann. § 16-55-206. Certainly, it cannot be said there is no "possibility" of such damages being awarded. *See Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011) (reversing district court's improper remand because punitive damages award of $2.4 million was *possible*).

24.    Courts have consistently stated that potential punitive damages may be calculated by multiplying potential compensatory damages by a factor of between four and six. *Basham v. Am. Nat. Cty. Mut. Ins. Co.*, 979 F. Supp. 2d 883, 889 (W.D. Ark. 2013) (removing party may factor in 6x punitive damages multiplier into CAFA amount in controversy calculation because such damages are possible); *see also Thatcher*, 2012 WL 1933079, at *6 (holding that punitive damages of over $11 million were potentially available where the breach of contract damages amounted to only a little over $2.4

million); *Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 275 (7th Cir. 2011) (Easterbrook, J.) (finding that a recovery of more than $3 million in punitive damages—based on a multiplier of five—was improbable but not legally impossible); *Bass v. Carmax Auto Superstores, Inc.*, 07–0883–CV–W–ODS, 2008 WL 441962, at *2 (W.D.Mo. Feb. 14, 2008) (holding that a punitive damages award of 6.7 times the amount of compensatory damages "would likely be constitutionally acceptable."); *Brown v. City Chevrolet, LLC,* No. 09–0642–CV–W–GAF, 2009 WL 3485833, at *1 (W.D.Mo. Oct. 28, 2009) (holding that a multiplier of over 3.98 was permissible); *Kerr v. Ace Cash Experts, Inc.*, 4:10 CV 1645 DDN, 2010 WL 5177977, at *2 (E.D.Mo. Dec. 14, 2010) (holding that a compensatory damages award of only $594,000 could "satisfy the amount in controversy requirement because of the potential for punitive damages and attorney's fees.").

25.     Based on Plaintiff's allegations, Plaintiff could be awarded a punitive damages award equal to 6x Plaintiff's compensatory damages—i.e. $9,903,880.14.[5] Even applying a conservative punitive damages multiplier—3.5x Plaintiff's compensatory damages—would still result in a punitive damages award of over $5 million.[6]

26.     <u>Attorneys' Fees</u>: Additionally, Plaintiff requests attorneys' fees (Complaint, Prayer for Relief ¶ 3), which should also be considered when determining the amount in controversy. *Toller v. Sagamore Ins. Co.*, 514 F. Supp. 2d 1111, 1116 (E.D.

---

[5] (1,650,646.69) (6) = $9,903,880.14.

[6] (1,650,646.69) (3.5) = $5,777,263.42.

Ark. 2007); *see also Thatcher,* 2012 WL 1933079, at *6 (without expressing an opinion on whether fees would be awarded, the court noted that attorneys' fees could be awarded, and therefore should be included in the calculations concerning the amount in controversy threshold for CAFA purposes).

27.     Plaintiff has alleged three separate causes of action—violation of the ADTPA, breach of contract, and breach of implied warranty of merchantability—that can cause an award of attorney's fees. *See* Ark. Code Ann. § 4-88-113(f) ("Any person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter has a cause of action to recover actual damages, if appropriate, and reasonable attorney's fees"); *Thomas v. Olson,* 364 Ark. 444, 451 (Ark. 2005) (attorneys' fees may be awarded if a plaintiff recovers actual damages under the ADTPA); Ark. Code Ann. § 16-22-308 ("In any civil action to recover on a[]...contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee..."); *Manuela v. Wheat,* 2007 U.S. Dist. LEXIS 83620, at *2-3 (E.D. Ark. Oct 31 2007) (awarding fees when the court found for the plaintiffs primarily based on breach of the implied warranty of fitness for a particular purpose).

28.     Numerous Arkansas federal district courts have held that 40% of the total possible recovery is a reasonable estimate of potential awardable attorneys' fees. *Basham,* 979 F. Supp. 2d at 890 (attorneys' fees can equal 40% of total recovery for purposes of calculating CAFA amount in controversy); *Thatcher,* 2012 WL 1933079, at *5

("The Court strongly doubts that any plaintiff's attorney would argue that attorneys' fees permissible under an applicable statute could not be awarded by a court with jurisdiction over the matter."); *Knowles v. Standard Fire Ins. Co.,* 4:11–CV–4044, 2013 WL 3968490, at *6 (W.D. Ark. August 2, 2013) ("[E]ven though other courts have found it reasonable to award attorney's fees at a rate of 20–25% of the total recovery, this does not mean that a 40% rate would be legally impossible."). Yeti has already shown that when combined, restitution/compensatory damages and punitive damages could exceed $10 million.[7] It follows that Plaintiff's claims could result in an award of attorneys' fees in excess of $4.5 million[8], bringing the total amount in controversy *before factoring in injunctive relief* to over $15 million.

29.    Declaratory Relief and Injunctive Relief: Finally, Plaintiff has requested declaratory and injunctive relief.  Specifically, Plaintiff requests this Court declare, as a matter of law, that Yeti's advertising practices violate the ADTPA as to *all Arkansas consumers,* and further requests that the Court enjoin Defendants from selling its coolers in Arkansas to *any consumer* (not just consumers who may purchase from Mack's) using its current methodology for measuring volume. (Complaint ¶¶ 26, 44).

30.    It is well established within the 8th Circuit that the value of equitable and injunctive relief counts towards the amount in controversy. *See Toller,* 558 F. Supp. 2d at 930-31 (denying motion to remand).  In *Toller,* this Court recognized that the "plaintiff-

---

[7] 1,650,646.69 + 9,903,880.14 = $11,554,526.83.

[8] (11,554,526.83) (0.4) = $4,621,810.73.

centric" method of calculating the value of injunctive and declaratory relief cannot be squared with the text, purpose, or intent of CAFA:

> "Traditionally, the Eighth Circuit has held that a district court must rely solely on the plaintiff's viewpoint in determining the amount in controversy. Courts refused to consider the cost of injunctive relief to the defendant because that would effectively aggregate the plaintiffs' claims to satisfy the amount in controversy, which plaintiffs were not allowed to do. However, after those cases were decided, Congress adopted [CAFA], which requires that the claims of Class action plaintiffs be aggregated in determining whether jurisdictional minimum of $5,000,000 is met. The adoption of this provision requiring aggregation of the plaintiffs' claims is inconsistent with the old rule that required that the amount in controversy be viewed solely from the plaintiff's viewpoint. In determining the amount in controversy under [CAFA], the value of injunctive relief should probably be considered from either the plaintiffs' or the defendant's point of view." *Toller v. Sagamore Ins. Co.*, 558 F.Supp.2d 924, 930–31 (E.D.Ark.2008) (Holmes, J.).

The court noted that the proper approach for valuing claims for injunctive relief under CAFA includes the "aggregate cost to the defendant." *Id.* at 932. Ultimately, Judge Holmes denied the plaintiff's motion to remand because he determined that the possible economic consequences of the injunctive relief for the defendant far exceeded $5 million. *Id.*

31.    Judge Holmes' opinion has since been adopted by other federal district courts. For example, in *Adams v. Am. Family Mut. Ins. Co.*, the court rejected the plaintiff's attempts to "create an artificial distinction between the relief they seek . . . and the *value* of that relief." 981 F. Supp. 2d 837, 850 (S.D. Iowa 2013) (denying plaintiff's motion to remand because "if Plaintiffs are awarded the declaratory and injunctive relief they seek, Defendant is likely to face pecuniary costs that logically flow from such relief in amounts exceeding $5 million."). The court reasoned that because

substantial pecuniary costs to Defendant are virtually certain to "logically flow" from the declaratory and injunctive relief awarded, those costs should be considered when calculating the amount in controversy. *Id.*

32.     If this Court were to accept Plaintiff's allegation that Yeti's volume methodology is misleading and declare the use of that methodology in Yeti's advertising and/or labeling a *per se* violation of the ADTPA, future plaintiffs could argue that Yeti is collaterally estopped from ever again litigating the issue. *Craven v. Fulton Sanitation Serv., Inc.*, 361 Ark. 390, 394, 206 S.W.3d 842, 844 (2005) ("Issue preclusion, better known in this state as collateral estoppel, bars relitigation of issues of law or fact previously litigated, provided that the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question and that the issue was essential to the judgment."). Practically speaking, such a declaration would enable every person who purchased a Yeti cooler in Arkansas since April 15, 2009 to attempt to recover from Yeti based on the finding that all of Yeti's coolers violate the ADTPA. The *wholesale* value of sales by Yeti to distributors and citizens in Arkansas during the Class Period of April, 15 2009 to the present total more than $14 million. *See* Exhibit A (Louviere Decl.), ¶ 8. After factoring in the 35% retail markup and Arkansas sales tax of 6.5%, Yeti's potential exposure climbs to $23,309,520.60. These are the *minimum* damages and "aggregate costs" to Yeti that could "logically flow" from a finding in Plaintiff's favor on all counts in this case. *Toller,* 558 F. Supp. 2d at 932.

33.     Along the same lines, if this Court were to grant Plaintiff's request for an injunction, Yeti could be forced to recall every cooler currently offered for sale in Arkansas. Additionally, Yeti would either have to permanently withdraw its coolers from the Arkansas market, or redesign its coolers. This too would require Yeti to take on huge costs.

34.     <u>Total Amount in Controversy</u>:  Yeti has carried its burden of establishing "how the controversy exceeds $5 million." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 946 (8th Cir. 2012) (emphasis added).  Plaintiff's Complaint puts more than $38 million in controversy.[9] As such, "remand is only appropriate if the plaintiff can establish to a ***legal certainty*** that the claim is for less than the requisite amount." *Id.*

**D.     No CAFA Exceptions Apply**

35.     This action does not fall within any exception to CAFA removal jurisdiction, and Plaintiff must prove otherwise. *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) ("Once CAFA's initial jurisdictional requirements have been established by the party seeking removal…the burden shifts to the party seeking remand to establish that one of CAFA's express jurisdictional exceptions applies.").

**E.     Yeti Has Satisfied All Other Requirements For Removal**

36.     Under 28 U.S.C. § 1446, assignment to the United States District Court for the Eastern District of Arkansas is proper because Plaintiff sued Yeti in the Circuit Court of Pope County, Arkansas.

---

[9] 1,650,646.69 + 9,903,880.14 + 4,621,810.73 + 21,886,873.84 = $38,063,211.40.

37.     Under 28 U.S.C. §1446, Yeti has provided this Court with copies of all process, pleadings, and orders served on and/or received by Yeti , attached as Exhibit B.

38.     Promptly after filing this Notice of Removal, Yeti will provide written notice of removal to Plaintiff and co-Defendant and will file a copy of this Notice of Removal with the Circuit Court of Pope County, Arkansas, Civil Division 4.

F.     **Non-Waiver of Defenses**

39.     Yeti expressly reserves all of its defenses. By removing the action to this Court, Yeti waives no rights or defenses available under federal or state law. Yeti expressly reserves the right to move for dismissal of the Complaint under Rule 12 of the Federal Rules of Civil Procedure. Nothing in this Removal should be taken as an admission that Plaintiff's allegations are sufficient to state a claim for relief or have any merit.

WHEREFORE, Defendant YETI Coolers LLC, under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, removes this action from the Circuit Court of Pope County, Arkansas, to the United States District Court for the Eastern District of Arkansas, and seeks resolution by this Court of all issues raised herein.

-15-

Respectfully submitted,

PPGMR LAW, PLLC

G. Alan Perkins (AR Bar #91115)
Alan@ppgmrlaw.com
Micah L. Goodwin (AR Bar #2015213)
micah@ppgmrlaw.com
P.O. Box 251618
Little Rock, AR  72225-1618
(501) 603-9000 (Tel)
(501) 603-0556 (Fax)

-AND-

**ANDREWS KURTH LLP**

David P. Whittlesey (TX Bar #00791920)
dwhittlesey@aklllp.com
111 Congress Ave., Suite 1700
Austin, Texas 78701
(512) 320-9200 (Tel)
(512) 481-4930 (Fax)

Joseph W. Golinkin, II (TX Bar # 24087596)
jebgolinkin@akllp.com
600 Travis St., Suite 4200
Houston, TX 77007
(713) 220-4989 (Tel)
(713) 238-5094 (Fax)

*Pro Hac Vice Motions to be Filed*

Attorneys for Defendant YETI Coolers, LLC

## CERTIFICATE OF SERVICE

I certify that on July 26, 2016, a true and correct copy of this document was served on the following attorney of record by United States certified mail, return receipt requested, as follows:

> Russell A. Wood, Esq.
> Wood Law Firm, P.A.
> 501 East 4th Street
> Russellville, Arkansas 72801
> *Counsel for Plaintiff*

> Richard T. Donovan
> Rose Law Firm
> 120 East Fourth Street
> Little Rock, AR 72201
> *Counsel for Defendant Mack's Sport Shop, LLP*
> *d/b/a Mack's Prairie Wings*

G. Alan Perkins

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| JAMES MOORE, on behalf of himself and all similarly situated persons and entities, §§§ | |
| *Plaintiff*, § | CIVIL ACTION NO. _____ |
| v. §§ | [Removed from the Circuit Court of Pope County, Arkansas, Civil Division 4, Case No. CV-2015-110] |
| MACK'S SPORT SHOP, LLLP D/B/A MACK'S PRAIRIE WINGS, LLLP, AND YETI COOLERS, LLC, §§§§ | |
| *Defendants*. § | |

---

## DECLARATION OF ALLISON LOUVIERE

---

1.     I am currently employed by YETI Coolers, LLC ("Yeti"), and have been so employed since January of 2013. Currently I hold the position of Staff Financial Analyst and am responsible for financial reporting & analysis, SG&A consolidation, generation of monthly business reviews, & strategic business partnering with functional leaders. I make this Declaration pursuant to 28 U.S.C. § 1746. The statements set forth in this Declaration are based on my personal knowledge, or are based on a personal review of business records of Yeti that were kept in the course of its regularly conducted business activity and were prepared as a regular practice and custom. I am over 21 years of age and am competent to testify to the statements set forth in this Declaration.

2.     I have reviewed Plaintiff's First Amended Class Action Complaint ("Complaint") filed on June 23, 2016 in the Circuit Court of Pope County, Arkansas,



EXHIBIT
A

Civil Division 4, styled *Moore v. Mack's Sport Shop, LLLP d/b/a Mack's Prarie Wings LLLP and YETI Coolers LLC*, and assigned Case No. CV-2015-110.

3.      Plaintiff seeks to represent a putative class concerning Arkansas citizens who purchased Yeti coolers, including but not limited to model numbers YT35; YT45; YT50; YT65; YT75; YT85; YT105; YT120; YT155; and YT250 ("Hard Coolers") from Defendant Mack's Sports Shop, LLLP d/b/a Mack's Prarie Wings ("Mack's"), either at Mack's retail store or on Mack's website between April 15, 2009 and present.

4.      I am familiar with Yeti's books and records pertaining to its sales of Hard Coolers.  For the purposes of determining the amount in controversy in this matter, I reviewed Yeti's books and records to determine (1) the volume of Yeti's Hard Cooler sales to Mack's between April 15, 2009 and the present, and (2) the volume of Yeti's Hard Cooler sales to individuals and/or entities in Arkansas between April of 2009 and present.

5.      Mack's has been an authorized distributor of Yeti Hard Coolers since 2009.  Mack's pays a wholesale price for Hard Coolers.

6.      Since April 15, 2009, Yeti has sold more than 1,000 Hard Coolers to Mack's for purposes of re-sale to consumers.

7.      Since April 15, 2009, the total sales volume of Yeti Hard Coolers to Mack's and shipped to Arkansas totaled approximately $1,007,437.

8.      Yeti sells Hard Coolers to Arkansas residents through numerous other retail stores besides Mack's.  Yeti also sells coolers to Arkansas residents directly over

2

the Internet.  Since April 15, 2009, the total sales volume of Yeti of Hard Coolers to citizens of Arkansas totaled approximately $14,226,468.

9.      Mack's and other authorized Yeti distributors sell Yeti Hard Coolers at "retail" price.  Typically, the retail price of Yeti Hard Coolers is roughly 35% higher than the wholesale price.

10.     The total pre-tax, retail value of the Hard Coolers sold to Mack's by Yeti for re-sale to consumers in Arkansas since April 15, 2009 is estimated at approximately $1,549,903.

I declare under penalty of perjury of the laws of the United States and the State of Texas that the foregoing is true and correct.

Executed on this 25th day of July, 2016.


_____
Allison Louviere
YETI COOLERS, LLC Representative

3

 **CT Corporation**

**Service of Process Transmittal**
06/28/2016
CT Log Number 529409683

TO:     Accounting Department
        YETI Coolers, LLC
        5301 Southwest Pkwy Ste 200
        Austin, TX 78735-8986

RE:     **Process Served in Texas**

FOR:    YETI Coolers, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JAMES MOORE, on behalf of himself and all similarly situated persons and entities, Pltfs. vs. MACK'S SPORT SHOP, LLLP, etc. and YETI COOLERS, LLC, Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Proof of Service, Attachment(s), First Amended Complaint, Exhibit |
| **COURT/AGENCY:** | POPE COUNTY : CIRCUIT COURT, AR<br>Case # CV2015110 |
| **NATURE OF ACTION:** | Class action - Plaintiffs seeking relief for the damages sustained as a result of defendants violation of the ADTPA |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Dallas, TX |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 06/28/2016 postmarked on 06/23/2016 |
| **JURISDICTION SERVED :** | Texas |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of this summons on you (not counting the day you received it) |
| **ATTORNEY(S) / SENDER(S):** | Russell A. Wood<br>Wood Law Firm, P.A.<br>501 East 4th Street<br>Russellville, AR 72801 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 783468090711 |
| **SIGNED:**<br>**ADDRESS:**<br><br><br>**TELEPHONE:** | C T Corporation System<br>1999 Bryan St Ste 900<br>Dallas, TX 75201-3140<br>214-932-3601 |

Page 1 of  1 / AC

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



EXHIBIT
B

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**™

WOOD LAW FIRM, P.A.
**Russell A. Wood**
Attorney at Law
501 East 4th Street, Suite
Russellville, AR  72801



7006 2150 0001 0440 5245



1000



75201

U.S. POSTAGE
PAID
RUSSELLVILLE, AR
72801
JUN 23  16
AMOUNT
**$12.52**
R2304N116664-02

**RESTRICTED
DELIVERY**

CT Corporation System, Registered Agent
 For YETI Coolers, LLC
1999 Bryan Street, Suite 900
Dallas, Texas 75201-136

IN THE CIRCUIT COURT OF POPE COUNTY, ARKANSAS
CIVIL DIVISION 4

| | | |
|---|---|---|
| JAMES MOORE, on behalf of himself and all similarly situated persons and entities, | ) ) ) | No. CV-2015-110 |
| PLAINTIFF, | ) ) ) | **FIRST AMENDED CLASS ACTION** |
| v. | ) ) | **COMPLAINT** |
| MACK'S SPORT SHOP, LLLP d/b/a MACK'S PRAIRIE WINGS, LLLP and YETI COOLERS, LLC, | ) ) ) ) | **JURY TRIAL DEMANDED** |
| DEFENDANTS. | ) | |

## SUMMONS

THE STATE OF ARKANSAS TO DEFENDANT:

CT Corporation System
Registered Agent for
YETI Coolers, LLC
1999 Bryan Street, Suite 900
Dallas, Texas 75201-136

A law lawsuit has been filed against you. The relief demanded is stated in the attached First Amended Class Action Complaint. Within 30 days after service of this summons on you (not counting the day you received it)—60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas—you must file with the clerk of this court a written answer to the First Amended Class Action Complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are: Russell A. Wood, Attorney at Law, 501 East 4th St. Suite 4, Russellville, Arkansas 72801.

If you fail to respond within he applicable time period, judgment by default may be entered against you for the relief demanded in the First Amended Class Action Complaint.

Address of Clerk's Office:
POPE COUNTY COURTHOUSE
RUSSELLVILLE, AR 72810

DIANE WILLCUTT, CLERK

BY _Lyn Wescott_ D.C.
06-23-2016

No._____ This summons is for **CT CORPORATION SYSTEM**, Registered Agent for YETI Coolers, LLC,
**Defendant**

## PROOF OF SERVICE

☐   I personally delivered the summons and First Amended Class Action Complaint to the individual at
(place) on _____(date), or

☐   I left the summons and First Amended Class Action Complaint in the proximity of the individual by
after he/she refused to receive it when I offered it to him/her; or

☐   I left the summons and First Amended Class Action Complaint at the individual's dwelling house or usual
place of abode at
_____(address) with _____(name), a person
at least 14 years of age who resides there, on _____(date); or

☐   I delivered the summons and First Amended Class Action Complaint to
_____(name of individual), an agent authorized by appointment or by
law to receive service of summons on behalf of _____(name of defendant)
on _____(date); or

☐   I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and
First Amended Class Action Complaint on the defendant by certified mail, return receipt requested,
restricted delivery, or shown by the attached signed return receipt.

☐   I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and First Amended Class Action Complaint by first-class mail to the defendant together with
two copies of a notice and acknowledgment and received the attached notice and acknowledgment form
within twenty days after the date of mailing.

☐   Other (specify):_____

☐   I was unable to execute service because;

      My fee is $_____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date:_____          SHERIFF OF _____COUNTY,
ARKANSAS

By:_____
(Signature of server)

_____
Printed name, title, and badge number)

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date:_____
By:_____
Signature of server)

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date:_____

_____
Notary Public

My Commission expires:_____

Additional information regarding service or attempted service:

_____

_____

3

IN THE CIRCUIT COURT OF POPE COUNTY, ARKANSAS
CIVIL DIVISION 4

| | |
|---|---|
| JAMES MOORE, on behalf of himself and all similarly situated persons and entities, | ) ) ) No. CV-2015-110 ) |
| PLAINTIFF, | ) ) |
| v. | ) **FIRST AMENDED CLASS ACTION** ) **COMPLAINT** ) |
| MACK'S SPORT SHOP, LLLP d/b/a MACK'S PRAIRIE WINGS, LLLP and YETI COOLERS, LLC, | ) ) **JURY TRIAL DEMANDED** ) |
| DEFENDANTS. | ) |

Plaintiff, James Moore, on behalf of himself and on behalf of all other similarly situated

persons and entities, for his First Amended Class Action Complaint alleges as follows:

**I.**

**NATURE OF THE ACTION**

1.     This is a Class Action Complaint for deceptive trade practices and for breach of

contract for all Arkansas consumers who purchased a Yeti cooler from the Defendant Mack's.

Among other forms of relief, the named Plaintiff and the Class Members seek restitution for the

deceptive collection of unlawful monies, damages for breach of contract, damages for violation

of the Uniform Commercial Code – Sales, interest, injunctive and declaratory relief enjoining the

future unlawful conduct.

**II.**

**JURISDICTION AND VENUE**

2.     This Court has jurisdiction pursuant to Ark. Const., Article 16, § 13, Ark. Const.,

Amend. 80, § 6, and Ark. Code Ann. § 16-13-201(a).  This Court also has jurisdiction pursuant to Rule 23 of the Arkansas Rules of Civil Procedure.

3.     This Court has personal jurisdiction over Mack's Sport Shop, LLLP d/b/a Mack's Prairie Wings, LLLP (hereinafter "Mack's") and Yeti Coolers, LLC (hereinafter "Yeti) pursuant to ARK. CODE ANN. § 16-4-101.  At all times material to this action, Defendants were conducting business in the State of Arkansas.

4.     Venue for this civil action is proper in Pope County pursuant to ARK. CODE ANN. § 16-60-101(a)(3)(A) on the ground that Plaintiff is a resident of Pope County.

5.     The named Plaintiff and the Class Members assert no federal question.  The state law causes of action asserted herein are not federally pre-empted.

6.     Plaintiff brings this civil action on behalf of himself and on behalf of other Mack's consumers of Yeti coolers in Arkansas to enjoin the illegal established practices of the Defendants.  Plaintiff brings this Class Action complaint for deceptive trade practices and breach of contract for deceptively advertising and selling Yeti coolers as containing more volume than they actually contain.  The named Plaintiff and the class members assert that the amount in controversy will not exceed the sum or value of $5,000,000, including compensatory damages, restitution, injunctive relief, interest, costs and attorney's fees.  Plaintiff specifically waives any right to any amount in controversy which exceeds $5,000,000, including compensatory damages, restitution, injunctive relief, interest, costs and attorney's fees.  The aggregate amount in controversy of the Class Members' claims does not and will not exceed $5,000,000.  Upon information and belief, no individual claim will exceed $500.

## III.

## THE PARTIES

7.     Plaintiff James Moore (hereinafter referred to as "Plaintiff") is an individual

residing in Pope County, Arkansas.  Plaintiff is a member and proposed representative of a class

of Arkansas consumers who bought a Yeti Cooler(s) from the Defendant Mack's.

8.      Defendant Mack's is a domestic, limited liability partnership registered to do

business in the State of Arkansas.  Defendants' registered agent for service is Eric Chin, 2335

Hwy 63 North, Stuttgart, AR 72160.

9.      Defendant YETI Coolers, LLC ("YETI") is a Delaware limited liability company

which makes its coolers available for sale to consumers throughout Arkansas at retailers like

Defendant Mack's.  Defendant YETI's registered agent for service of process is CT Corporation

System, 1999 Bryan Street, Suite 900, Dallas, Texas  75201-3136.

## IV.

## FACTUAL ALLEGATIONS

### A.    Summary of Class Allegations

10.      Mack's Prairie Wings advertises itself as America's Premiere Water Fowl

Outfitter and the biggest and most extensive water fowl hunting website on the web.  The

Defendants' headquarters are located at 2335, Highway 63 North, Stuttgart, Arkansas 72160 and

maintains a retail hunting website located at www.mackspw.com

11.      Defendant Mack's is a dealer for Yeti Coolers which are expensive, premium

coolers of varying sizes.  Defendants are sellers of Yeti Coolers for purposes of Ark. Code Ann.

4-2-103(d).

12.      The Defendant advertises various models of the Yeti Coolers and the chart below

shows the advertised volume verses the actual volume of the Yeti Coolers:

| MODEL | ADVERTISED QUARTS | ACTUAL QUARTS |
|---|---|---|
| YT35B | 35 | 28.60 |
| YT45W | 45 | 37.60 |
| YT50T | 50 | 45.80 |
| YT65W | 65 | 57.20 |
| YT75W | 75 | 74.80 |
| YT85 | 85 | |
| YT105W | 105 | 87.20 |
| YT120 | 120 | |
| YT155T | 155 | |
| YT250W | 250 | 232.40 |

13.     Upon information and belief, documents provided by Defendant YETI to

Defendant Mack's, including invoices, *falsely* indicate the capacity of the coolers and that it is

appropriate for Defendant Mack's to create advertisements, floor displays, and other materials

promoting the volume capacity of various Yeti coolers in "advertised quarts," as listed above.  In

fact, however, Defendant YETI's documents are false, fraudulent, and misleading in that the

coolers can only hold the "actual quarts" specified in the above chart.

14.     It is standard practice within the cooler industry to use a numerical designation

within the name or model of a cooler in order to signal the volume capacity, in quarts, of that

particular cooler.  This practice is so regularly observed within the trade so as to justify

consumers' expectation that it would be observed with respect to Yeti Coolers.

15.     On October 21, 2014 Plaintiff James Moore ordered a Yeti 45 Quart Tundra

Cooler from the Defendant and paid a total of $386.74. (See Exhibit A, attached).

16.     Plaintiff subsequently discovered that the Yeti 45 Quart Tundra Cooler was not

forty-five quarts as advertised by the Defendant, but rather, only 37.6 quarts.

17.    Upon information and belief, the Defendants misrepresents the actual volume of each and every model Yeti Cooler sold by Defendant Mack's. Defendants misrepresent the actual volume of Yeti coolers in Mack's store, on Mack's website, and in the written advertisements Defendant Mack's sends through the United States mail.

18.    Plaintiff and the proposed class members relied upon the statements of the Defendants to their detriment.

19.    Defendants' conduct, through its representatives, is without justification. The Defendants have defrauded the consumers by advertising the Yeti coolers volume to be larger than actual size.

20.    Upon information and belief, the money collected from the sale of the Yeti coolers has been used for the benefit of the Defendants.

## V.

## CLASS ACTION ALLEGATIONS

21.    The named Plaintiff brings this action as a Class Action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure on behalf of:

> All Arkansas consumers and entities, including Plaintiff and all similarly situated persons for the period from April 15, 2009 to the present ("Class Period") who purchased a Yeti cooler from the Defendant Mack's, either at a Mack's retail store or over the internet.

> Excluded from the class are the agents, affiliates and employees of the Defendants and the assigned judge and his/her staff, and members of the appellate court and their staff.

22.    **Numerosity.** The requirements of Rule 23(a) are satisfied in that there are too many Class Members for joinder of all of them to be practicable. Defendant Mack's is a large

retail business located in Stuttgart, AR and is the "biggest waterfowl hunting website on the web." As a result, the Class is so numerous that joinder of all members in a single action is impracticable. The members of the Class are readily identifiable from the information and records in the possession or control of Defendants.

23.     **Commonality.** The claims of the Class Members raise numerous common issues of fact and law, thereby satisfying the requirements of Rule 23(a). These common legal and factual questions, which do not vary from one Class Member to another, and which may be determined without reference to the individual circumstances of any Class Member, include, but are not limited to, the following questions:

A.     Whether Defendants' conduct constitutes breach of contract;

B.     Whether Defendants participate in and pursues the common course of conduct complained of herein;

C.     Whether Defendants' conduct violates Arkansas common law;

D.     Whether Defendants' conduct constitutes a deceptive trade practice;

E.     Whether Defendants' wrongful conduct resulted in economic damages to Plaintiff and members of the Class;

F.     Whether the Class is entitled to damages and, if so, the amount of such damages;

G.     The nature of additional relief to which Plaintiff and the Class are entitled, including, but not limited to, an Injunction for the conduct alleged herein and the establishment of a Constructive Trust.

24.     **Typicality**. The claims of the named Plaintiff are typical of the unnamed Class Members because they have a common source and rest upon the same legal and remedial theories, thereby satisfying the requirements of Rule 23(a). For example, the named Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class Members were injured or damaged by the same wrongful practices in which Defendant engaged, namely, the

breach of contract, violation of the Uniform Commercial Code – Sales, and deceptive practices.

25.     **Adequacy of Representation.**  The requirements of Rule 23(a) are satisfied in that the named Plaintiff has a sufficient stake in the litigation to vigorously prosecute this claim on behalf of the Class Members, and the named Plaintiffs interests are aligned with those of the proposed class. There are no defenses of a unique nature that may be asserted against Plaintiff individually, as distinguished from the other members of the Class, and the relief sought is common to the Class.  Plaintiff does not have any interest that is in conflict with or is antagonistic to the interests of the members of the Class, and has no conflict with any other member of the Class.  Plaintiff has retained competent counsel experienced in class action litigation to represent him and the Class in this litigation.

26.     **Declaratory and Injunctive Relief**.  All of the requirements for Rule 23 also are satisfied in that the Defendants' actions affected all Class Members in the same manner, making appropriate final declaratory and injunctive relief with respect to the Class as a whole.  For example, Plaintiff seeks with respect to the Class as a whole a declaration that the Defendants breached a contract.  Furthermore, injunctive relief is necessary to prevent others from succumbing to Defendants' unlawful practices.  Because the monetary damages to an individual Class Member is relatively small and is ascertainable to a liquidated amount, monetary relief does not so overwhelm this action that it cannot also be certified for injunctive relief in order to enjoin Defendants from further violating Arkansas statutory and common law.

27.     **Predominance and Superiority.**  All of the requirements for Rule 23(c) are satisfied in that class action treatment is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are significant, the individual damages incurred by each Class

Member resulting from Defendants' unlawful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class Members prosecuting separate claims is remote and, even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation in such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent or contradictory judgments while magnifying the delay and expense to all parties and to the court system resulting in multiple trials of the same factual issue and creating the possibility of repetitious litigation. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole.

## VI.

## CAUSES OF ACTION

### COUNT I - VIOLATIONS OF ADTPA, ARK. CODE ANN. § 4-88-101, et seq.

28.     Plaintiff incorporates all allegations in each preceding paragraph as if fully set forth herein.

29.     Pursuant to the ADTPA, ARK. CODE ANN. § 4-88-113(f), Plaintiff and the Class Members are entitled to bring a private action for Defendants' violation of the ADTPA because, among other things, they have suffered an ascertainable loss of money, namely that the payment of monies for a Yeti cooler that was misrepresented by Defendants.

30.    Defendants' collection of the above described monies constitutes an unfair or deceptive practice which affects trade or commerce within Arkansas in violation of the ADTPA, ARK. CODE ANN. § 4-88-107 & 108.

31.    Defendants uniformly represented to Arkansas consumers that the advertised volume of the Yeti Cooler was accurate.

32.    Defendants, as part of their regular and intended practice, knew that its customers were unaware of the fact that Defendants misrepresented the volume of Yeti coolers in violation of Arkansas law.  Defendants intentionally failed to advise their customers of these facts.

33.    Defendants' conduct described in the preceding paragraphs was not isolated or unique to the Plaintiff, but was widespread, covering the time period of at least the past five (5) years, affecting thousands of Arkansas consumers, and was a regular and intended business practice of Defendant, instituted and implemented with a view towards unfairly profiting at the expense of its customers.

34.    As a result of the above described unfair or deceptive acts or practices, all of which affect the conduct of trade and commerce in Arkansas, Defendants have violated the following provisions of the ADTPA, ARK. CODE ANN § 4-88-107(a):

> (1) representing that its goods or services have...characteristics...uses, or benefits that they do not have;
>
> (3) advertising goods or services with the intent not to sell them as advertised;
>
> (10) engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade.

35.    As a result of Defendants' violations of the ADTPA, Plaintiff and other members of the Class have thereby suffered ascertainable losses, the exact amount of which is presently unknown, but which is capable of being liquidated.

36.    As a result of Defendants' violations of the ADTPA, Defendants are liable to

9

Plaintiff and the other members of the Class for all actual damages, including but not limited to, (1) the rescission of their payment for every Yeti Cooler sold, (2) pro rata reimbursement based on actual volume, (3) pre- and post-judgment interest on pro-rata reimbursement, (4) cost of suit, including experts' fees, (5) and such other costs and/or relief which the Court determines.

37.     Plaintiff and the Class Members further request their reasonable attorney's fees and costs, pursuant to the ADTPA, ARK. CODE ANN. § 4-88-113(e).

## COUNT II – INTENTIONAL MISREPRESENTATION, FRAUD, AND DECEIT

38.     Plaintiff incorporates all allegations in each preceding paragraph as if fully set forth herein.

39.     Defendants engage in continuous and systematic misrepresentations of material facts to the Class, including Plaintiff, by representing and advertising the incorrect volume of the Yeti Coolers.

40.     Defendants know that the misrepresentations are false or has reckless disregard for the truth or falsity of the representations due to Defendants' extensive knowledge and experience in the retail sales industry.

41.     Defendants intend for Arkansas consumers to act in reliance upon the misrepresentations by paying the bill of sale. Since Defendants' conduct is designed to induce Arkansas consumers to pay the unlawful charges, Defendants' conduct constitutes a continuous deception where reliance is assumed.

42.     Plaintiff and the Class justifiably relied upon the Defendants' misrepresentations due to Defendants' knowledge and experience in the retail sales industry. As a result of the reliance, Plaintiff and the Class suffered damages.

10

## COUNT III - DECLARATORY AND TEMPORARY AND PERMANENT INJUNCTIVE RELIEF PURSUANT TO ADTPA, ARK. CODE ANN. § 4-88-101, et seq.

43.     Plaintiff incorporates all allegations in each preceding paragraph as if fully set forth herein.

44.     Pursuant to § 4-88-101, *et seq.* of the ADTPA, Plaintiff and the Class Members request a declaration that the deceptive and/or unfair acts and practices with respect to the misrepresentation of the volume of Yeti Coolers is in violation of the ADTPA.  Further, Plaintiff and the Class Members seek a Temporary and Permanent Injunction to enjoin Defendants from further violating the ADTPA as described herein.

## COUNT IV -- UNJUST ENRICHMENT

45.     Plaintiff incorporates all allegations in each preceding paragraph as if fully set forth herein.

46.     A benefit has been conferred upon Defendants by the Plaintiff and the Class Members due to the purchase by Arkansas consumers of misrepresented Yeti Coolers. Defendants' acceptance and retention of such benefit is inequitable.

47.     As a result of the unlawful acts and practices of Defendants described above, Defendants were unjustly enriched by the monies it collected from Plaintiff and the Class. Plaintiff and the Class are entitled to damages as a result of Defendants' unjust enrichment, including the disgorgement of all monies taken by Defendants from Plaintiff and the Class.

## COUNT V – CONSTRUCTIVE TRUST

48.     Plaintiff incorporates all allegations in each preceding paragraph as if fully set forth herein.

49.     A constructive trust arises contrary to intention and *in invitum* [against an unwilling party], against one who, by commission of a wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.  As a result of the above described wrongful conduct, Defendants have obtained monies from the Plaintiff and the Class Members which, in equity and good conscience, they should not hold and enjoy. This Court should establish a constructive trust from which the Plaintiff and the Class Members may claim their fees.

### COUNT VI – NEGLIGENCE AND GROSS NEGLIGENCE

50.     Plaintiff incorporates all allegations in each preceding paragraph as if fully set forth herein.

51.     As a leader in the retail sales business in Arkansas and the United States, Defendants owed a duty of reasonable care in the advertising of Yeti Coolers to Plaintiff and the Class Members.  This duty included accurately describing the volume of Yeti Coolers, since volume (quarts) is the industry standard for sizing of coolers. Defendants, however, breached these duties by misrepresenting the volume of the Yeti coolers.

52.     As a direct and proximate result of the negligence and/or gross negligence of Defendants, Plaintiff and the Class Members have suffered damages.

### COUNT VII – BREACH OF CONTRACT

53.     Plaintiff incorporates all allegations in each preceding paragraph as if fully set forth herein.

54.     Defendants seek out, provide, and/or sanction written advertisement to consumers for the sale of Yeti Coolers.

55.     Defendants clearly misrepresent the actual volume of every Yeti Cooler carried by Defendant Mack's.

56.     Plaintiff and the Class members accepted the written and/or advertised terms of the transaction and paid for a Yeti Cooler based upon the volume representations of the Defendants.

57.     Defendants breached the written and/or advertised terms by failing to provide the Plaintiff and class members with a cooler the actual volume advertised.

58.     Defendants' breach of the written and/or advertised terms is unlawful and unjustified.

59.     As a result of Defendants' breach of contract, Plaintiff and other members of the Class have thereby suffered ascertainable losses, the exact amount of which is presently unknown, but which is capable of being liquidated.

## COUNT VIII – BREACH OF EXPRESS WARRANTIES, Ark. Code Ann. § 4-2-313

60.     Plaintiff incorporates all allegations in each preceding paragraph as if fully set forth herein.

61.     Defendants' written advertisements and other materials create affirmations of fact regarding the volume of every Yeti Cooler carried by Defendant Mack's.  (*See* Exhibit A, attached.)  These affirmations of fact become a part of the basis of the bargain between Arkansas consumers and the Defendants, creating express warranties that the coolers will conform to the affirmations.  Ark. Code Ann. § 4-2-313(1)(a).

62.     Defendants' written advertisements and other materials create a description of each Yeti Cooler carried by Defendant Mack's.  (*See* Exhibit A, attached.)  These descriptions

become a part of the basis of the bargain between Arkansas consumers and the Defendants, creating express warranties that the coolers will conform to the descriptions. Ark. Code Ann. § 4-2-313(1)(b).

63.     Defendants breached these express warranties by failing to provide the Plaintiff and Class Members with a cooler the actual volume advertised.

64.     Because Class Members were persons whom Defendants might reasonably have expected to use, consume, or be affected by the Yeti Coolers Class Members purchased, any lack of privity between Class Members and any Defendant is no defense to an action for breach of warranty, express or implied. Ark. Code Ann. 4-86-101.

## COUNT IX – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY, Ark. Code Ann. § 4-2-314(1)

65.     Plaintiff incorporates all allegations in each preceding paragraph as if fully set forth herein.

66.     Defendants deal in Yeti Coolers and also hold themselves out as having knowledge or skill peculiar to Yeti Coolers sold to Arkansas consumers. Defendants are therefore merchants with respect to those Yeti Coolers. Ark. Code Ann. § 4-2-104(1).

67.     Because Defendants are merchants with respect to Yeti Coolers, Defendants' sales of Yeti Coolers to Class Members included an implied warranty that the coolers were merchantable. Ark. Code Ann. 4-2-314(1).

68.     Defendants' Yeti Coolers sold to Class Members were not merchantable because:

    (a)     The coolers were unable to pass without objection in the trade under the contract description, Ark. Code Ann. § 4-2-314(2)(a); and

    (b)     The coolers did not conform to the promises and affirmations of fact made on their containers and labels, Ark. Code Ann. § 4-2-314(2)(f).

69.     Because Class Members were persons whom Defendants might reasonably have expected to use, consume, or be affected by the Yeti Coolers Class Members purchased, any lack of privity between Class Members and any Defendant is no defense to an action for breach of warranty, express or implied. Ark. Code Ann. 4-86-101.

## COUNT X – BREACH OF IMPLIED WARRANTY TO CONFORM WITH USAGE OF TRADE, Ark. Code Ann. § 4-2-314(3)

70.     Plaintiff incorporates all allegations in each preceding paragraph as if fully set forth herein.

71.     It is standard practice within the cooler industry to use a numerical designation within the name or model of a cooler in order to signal the volume capacity, in quarts, of that particular cooler. This practice is so regularly observed within the trade so as to justify consumers' expectation that it would be observed with respect to Yeti Coolers. That being so, this standard of practice is a usage of trade within the cooler industry. Ark. Code Ann. § 4-1-303(c).

72.     Pursuant to Ark. Code Ann. § 4-2-314(3), this usage of trade created an implied warranty that Defendants' Yeti Coolers purchased by Class Members exhibited a volume capacity, in quarts, consistent with the numerical designation within the names or models of the coolers.

73.     Defendants breached this implied warranty by failing to provide the Plaintiff and Class Members with coolers which conformed to this usage of trade.

74.     Because Class Members were persons whom Defendants might reasonably have expected to use, consume, or be affected by the Yeti Coolers Class Members purchased, any lack of privity between Class Members and any Defendant is no defense to an action for breach of warranty, express or implied. Ark. Code Ann. 4-86-101.

## VII.

### PRAYER FOR RELIEF

WHEREFORE, the named Plaintiff and the Class Members demand judgment against Defendants on each Count of the Complaint and the following relief:

1. For an Order certifying that this action may be maintained as a class action, appointing Plaintiff and his counsel to represent the Class, and directing that reasonable notice of this action be given by Defendants to Class Members;

2. Award each plaintiff Class Member their compensatory damages and/or restitution;

3. Grant the Plaintiff and Class Members their reasonable attorney's fees and costs incurred in this litigation;

4. Award pre-and post-judgment interest as provided by law in amount according to proof at trial;

5. Institute a constructive trust for the benefit of the Plaintiff and Class Members;

6. Enjoin Defendants from further engaging in the unlawful practices outlined above; and

7. Grant the Plaintiff Class Members such further relief as the Court may deem just and proper.

Mack's Prairie Wings - Duck Hunting, Hunting Dog Training, Ammuni...          htt    www.mackspw.com/Members/OrderComplete.asp

A copy of your order will be sent to:  rotorooter3@yahoo.com

Your Web Order Reference Number is:1881452

Thank you very much for placing your order with us.

Please use this number in any inquiries regarding your order.

You may wish to print or save this page for future reference.

**Bill To**
Mr.
James Ray Moore
1503 South Knoxville Ave
Russellville, Arkansas 72802
USA
Ph: 4799708065
Ph: 4799708065

**Ship To**
Mr.
James Ray Moore
1503 South Knoxville Ave
Russellville, Arkansas 72802
USA
Ph: 4799708065
Ph: 4799708065

Order Summary

Item Description
Availability
Quantity
Unit Price
Total Price

Yeti 45 Quart Tundra Cooler  Item #: YETYT 45 TAN
In Stock
1
1
    $349.99      $349.99
The availability status shown above is current as of 10:45 AM CST, Tuesday, October 21

| | |
|---|---|
| Subtotal: | $349.99 |
| Shipping Ground Shipping Charge: | Free! |
| Tax: | $36.75 |
| Total Cost: | $386.74 |

Our Company | Need Help? | Resources | Useful Links
Follow Us
Sign Up For Emails
Bizrate Circle of Excellence Bizrate Customer Certified

Mack's Prairie Wings is not responsible for typographical errors in pricing or product specification inaccuracies in our web site. Prices are subject to change without notice.

Copyright © 2004-2014 - Mack's Prairie Wings, Inc. - All rights reserved. Site Developed and Maintained by Ability Commerce

Mack's Prairie Wings takes pride in being the biggest and most extensive waterfowl hunting website on the web. The one thing we want you to know about Mack's Prairie Wings is that we hunt ducks! Mack's specializes in waterfowl gear but we also carry a huge line of various Hunting Decoys, products for Hunting Dogs, a large selection of Hunting Optics, Casual and Hunting Footwear, Casual and Hunting Clothing, Hunting Home and Kitchen Decor, Gifts for the Hunter, products for your ATV and Truck, Shooting Gear, Deer Hunting Gear and much more. Hunters choose the gear that goes onto the pages of our website and catalogs and onto the shelves into our stores, and that's why Mack's will always be able to offer the best selection of waterfowl and other hunting-related products in the world at the most competitive prices. Mack's Prairie Wings is proud of the quality of our products and want you to be fully satisfied with your purchase. Buy with confidence from Mack's as we've just made our 30 day return policy even EASIER! Our customer service experts are available to you by online chat, email, and phone. Check out our exclusive extras like the Hunting 101 page, our Social Networking sites, and a great Bargain Blind for super sales. At Mack's, we are proud to be a part of the BizRate Circle of Excellence for customer service and satisfaction. Be assured...when you buy waterfowl and hunting equipment from Mack's Prairie Wings, you buy from the best!
Tools
Home
Newsletter Sign Up
Bargain Blind
My Cart


PLAINTIFF'S
EXHIBIT

A