# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

JAMES MOORE, on behalf of himself
and all similarly situated persons and
entities                                                                    PLAINTIFF

v.                        Case No. 4:16-cv-00540-KGB

MACK'S SPORT SHOP, LLLP d/b/a
MACK'S PRAIRIE WINGS, LLLP,
and YETI COOLERS, LLC                                                       DEFENDANTS

## OPINION AND ORDER

Plaintiff James Moore brings this action on behalf of himself and a putative class alleging that defendants engaged in purportedly deceptive trade practices, as well as other unlawful conduct (Dkt. No. 2). Before the Court is a motion for summary judgment filed by separate defendants Mack's Sport Shop, LLLP, and Mack's Prairie Wings, LLLP (collectively "Mack Defendants") (Dkt. No. 18). Mr. Moore has responded in opposition to the motion (Dkt. No. 29), and the Mack Defendants have filed a reply (Dkt. No. 31). Separate Defendant Yeti Coolers, LLC ("Yeti"), filed a motion to join in the Mack Defendants' motion for summary judgment (Dkt. No. 32), to which Mr. Moore responded in opposition (Dkt. No. 33).

The Mack Defendants move for summary judgment on Mr. Moore's claims under the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. §§ 4-88-101, *et seq.* (Counts I and III), making several arguments in support. The Mack Defendants claim that Mr. Moore does not have actual damages or injury required under the ADTPA. They also argue that Mr. Moore does not come forward with evidence sufficient to show proof of the Mack Defendants' intent to deceive, as required under the false advertising provision of the ADTPA and that Mr. Moore has not, and cannot, prove that he reasonably relied on the alleged misrepresentations. The

Mack Defendants contend reliance is a necessary element to false advertising claims under the ADTPA. They also maintain that the "catch-all" provision of the ADTPA, Ark. Code Ann. § 4-88-107(a)(10), does not apply on these facts and that, even if that provision did apply, Mr. Moore cannot satisfy the elements of the claim. The Mack Defendants contend that, under the circumstances presented, reliance is required to prove causation under the ADTPA. Finally, the Mack Defendants contend that Mr. Moore is not entitled to the injunctive relief he seeks under the ADTPA.

The Mack Defendants also move for summary judgment on several of Mr. Moore's remaining claims, including his common law fraud or deceit claim (Count II), negligence and gross negligence claim (Count VI), his unjust enrichment claim (Count IV), his request for a constructive trust (Count V), and his breach of contract claim (Count VII). Mr. Moore opposes the Mack Defendants' motion.

The Mack Defendants failed to address Mr. Moore's claims for breach of express warranties (Count VIII), breach of implied warranty of merchantability (Count IX), and breach of implied warranty to conform with usage of trade (Count X) in their motion for summary judgment. However, the Mack Defendants do brief the issue of summary judgment on these claims in their reply (Dkt. No. 31). By this Order, the Court directs Mr. Moore to respond to the Mack Defendants arguments regarding his warranty claims within 14 days from the entry of this Order. The Mack Defendants will then have 7 days from Mr. Moore's filing of his response to file a reply, should they choose to do so. If appropriate, the Yeti defendants may move to join in this portion of the motion, and Mr. Moore may timely respond to that request.

# I.   Background Facts

These facts are taken from the Mack Defendants' brief in support of motion for summary judgment, unless otherwise noted (Dkt. No. 19, at 1-3).  In his response, Mr. Moore does not dispute these facts (Dkt. No. 30).

The Mack Defendants operate a retail store headquartered in Stuttgart, Arkansas, that sells hunting products and apparel in store, online, and through a catalog.  They are an authorized dealer of Yeti® coolers.  Yeti® coolers are premium coolers known for keeping ice and other cold products cold for days.  Mr. Moore purchased a Yeti® Tundra® cooler online from Mack's.  He alleges that the advertised volume of the Tundra® model was not accurate.  Specifically, he contends that the cooler holds 37.6 quarts, rather than 45 quarts.

Mack's has sold Yeti® coolers since 2006.  Product descriptions and specifications, including the size and dimensions of the various Yeti® cooler models are provided to Mack's by Yeti.  Likewise, pricing is determined by Yeti.  Mack's provides this product information to customers on its website and in store.

The cooler Mr. Moore purchased was called a "Yeti® 45 Quart Tundra Cooler" on his order confirmation.  Mr. Moore alleges that his cooler holds 37.6 quarts, not 45 quarts.  However, the actual dimensions of the Yeti® Tundra® model Mr. Moore purchased are available on Mack's website, www.mackspw.com.  Mr. Moore produced documents through discovery showing that the dimensions were available at the time of his purchase.

All of the information included in Mack's online product descriptions and specifications was provided by Yeti.  Mack's did not independently determine the volume of the Yeti® Tundra® cooler.  Mr. Moore's order confirmation contains the following disclaimer relating to product specifications on Mack's website:  "Mack's Prairie Wings is not responsible for typographical

errors in pricing or product specification inaccuracies in our web site. Prices are subject to change without notice."

Mr. Moore complains that his Yeti® cooler volume is slightly smaller than described and, therefore, the Mack Defendants violated the ADTPA and committed fraud, as well as other unlawful acts. He also seeks declaratory relief and temporary and permanent injunctive relief, and he makes claims for negligence, unjust enrichment, constructive trust, breach of contract, breach of express warranties, breach of the implied warranty of merchantability, and breach of the implied warranty to conform with usage of trade.

## II.    Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366

(8th Cir. 1997). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.    Analysis

### A.    ADTPA Claims

Mr. Moore brings two counts against defendants under the ADTPA (Counts I and III). Specifically, Mr. Moore brings his ADTPA claims under Arkansas Code Annotated §§ 4-88-107 and 108.  Separate Mack Defendants move for summary judgment on both counts, asserting several arguments.  Generally, to prevail on a private action under the ADTPA based on an affirmative misrepresentation, a plaintiff must show that:  "(1) the plaintiff has sustained damages; (2) the defendant used a deception, fraud, or false pretense in connection with the sale or advertisement of services; and (3) the defendant's conduct was a proximate cause of the plaintiff's damages." *Ramthun v. Bryan Career Coll. Inc.*, 93 F. Supp. 3d 1011, 1023–24 (W.D. Ark. 2015) (citing Ark. Code Ann. § 4–88–108; Ark. Model Jury Instr.—Civ. 2902; *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 666 (8th Cir. 2009)).  "To prevail on a private action under the ADTPA based on omission, a plaintiff must show that:  (1) the plaintiff has sustained damages; (2) the defendant concealed, suppressed, or omitted a material fact in connection with the sale or advertisement of services; (3) the defendant intended that others rely upon the concealment, suppression, or omission; and (4) the defendant's conduct was a proximate cause of the plaintiff's damages." *Id.* (citing Ark. Code Ann. § 4–88–113(f); *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005)).

### 1.    Actual Damages Or Injury

Under the ADTPA, on the type of claim Mr. Moore alleges, with respect to the issue of damages, the parties agree that a plaintiff must show that he has sustained "actual damage or

injury." Ark. Code Ann. § 4–88–113(f); *Yazdianpur v. Safeblood Technologies, Inc.*, 779 F.3d 530 (8th Cir. 2015); *Ramthun v. Bryan Career Coll.-Inc.*, 93 F. Supp. 3d 1011, 2023-24 (W.D. Ark. 2015); *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005)). Here, Mr. Moore alleges the Mack Defendants violated the ADTPA because they allegedly "misrepresented the volume" of Yeti® coolers in advertising and, as a result, Mr. Moore and the putative class members "suffered an ascertainable loss of money, namely that the payment of monies" for a Yeti® cooler that was purportedly misrepresented by the Mack Defendants (Dkt. No. 1, at 33, ¶ 29; 34, ¶ 32). In his complaint, Mr. Moore pleads for both rescission of his payment for the Yeti® cooler and pro rata reimbursement based on actual volume (Dkt. No. 1, at 34-35, ¶ 36). In his discovery responses, Mr. Moore states that he and the putative class "will have the option to rescind the purchase or to be paid a pro rata amount based on the purchased price." (Dkt. No. 18, Exhibit B). The Mack Defendants maintain that these are not actual damages under the ADTPA and, therefore, that Mr. Moore's ADTPA claims fail as a matter of law.

The Arkansas Supreme Court first examined this issue in *Wallis v. Ford Motor Company*, 208 S.W.3d at 154 ("The instant appeal involves an issue of first impression. This court is asked to determine whether the circuit court erred in dismissing a class-action fraud and statutory deceptive trade practices lawsuit arising out of the purchase or lease of an allegedly defective vehicle where the only injury complained of is a diminution in value of the vehicle. We hold that the complaint was properly dismissed by the circuit court."). In *Wallis*, D.R. "Buddy" Wallis filed a class-action lawsuit against Ford Motor Company alleging violations of the ADTPS and common-law fraud. *Id.* at 154. He sought to certify a class consisting of "all persons and entities in the State of Arkansas who now own or lease, or owned or leased, model year 1991 through 2001

Ford Explorer sport utility vehicles ('Explorers') purchased or leased in the State of Arkansas." *Id.*

Specifically, he claimed that Ford Motor Company knowingly concealed the fact that the Explorer had a dangerous design defect that caused it to roll over under normal operations. *Id.* Mr. Wallis alleged in the complaint that Ford Motor Company's alleged "cover up of the inherent design problems and resulting accidents, combined with its Explorer brand imaging, led millions of consumers to purchase or lease Ford Explorers at prices far in excess of the values which would have been assigned to such vehicles had these dangers been disclosed. Furthermore, thousands of Arkansas residents still own or lease Explorers, which are of substantially diminished value solely as a result of Ford's fraudulent and deceptive scheme." *Id.* Mr. Wallis did not allege any personal injury or property damage caused by the design defect, nor did he allege that the Explorer malfunctioned in any way. *Id.*

Determining that his entire damage claim rested on the *assertion* that the design defect "substantially diminished" the value of the Explorer, the Arkansas circuit court dismissed Mr. Wallis's complaint concluding that he failed to "state a legally cognizable cause of action. . . . [and that, because he had] not experienced a cognizable injury or damages as a result of the alleged defect, he ha[d] no cause of action." *Id.* at 155. The Arkansas Supreme Court affirmed. *Id.*

Since *Wallis*, other courts have examined what constitutes actual damages sufficient to state a private action under this provision of the ADTPA and have rejected plaintiffs' claims. *See Yazdianpour v. Safeblood Techs., Inc.,* 779 F.3d 530, 538 (8th Cir.2015) (alleging inability to patent technology); *Ramthun,* 93 F. Supp. 3d 1011, 1031 (W.D. Ark. 2015) (alleging inability to transfer educational credits); *Craig v. Twinings N. Am., Inc.*, No. 5:14-CV-05214, 2015 WL 505867, at *9 (W.D. Ark. Feb. 5, 2015) (alleging that tea did not include the antioxidants

represented).  One court determined that the actual damages alleged by plaintiff sufficed to state an ADTPA claim.  In *M.S. Wholesale Plumbing, Inc. v. University Sports Publications Co.,* the court determined that paying for a product that was "not at all what [defendant] represented" alleged sufficient facts to satisfy the ADTPA's actual damage requirement.  2008 WL 90022, at *3–4 (E.D. Ark. Jan. 7, 2008).  The court reasoned that, "[u]nlike the plaintiff in *Wallis,* who suffered a purely pecuniary loss, M.S. [was] not alleging that it purchased a product with less economic value than represented by the seller.  Instead, M.S. claim[ed] that it paid for a product that was not at all what USP represented—that is, an advertisement sold on behalf of ATU."  *Id.* at *4.  The *M.S. Wholesale* court allowed the claim to proceed.  *Id.*

Here, Mr. Moore argues that the diminution in value cases do not control and that *Wallis* is inapposite.  362 Ark. 317.  He argues that defendants sold to Mr. Moore a Yeti® Tundra® 45 Quart Cooler for $349.99 and that this equates to an actual cost to Mr. Moore of $7.78 per quart that defendants represented Mr. Moore was purchasing.  However, Mr. Moore contends that the cooler was only 37.6 quarts, which he maintains means he should have only paid $292.53 for the volume cooler that he received.  Mr. Moore contends that volume exclusively determines the price of the coolers and that defendants knowingly marketed the cooler at a larger volume so that they could charge Mr. Moore more for the cooler.  The Mack Defendants maintain that this argument, regardless of Mr. Moore's attempts to characterize it as something else, is a diminution in value argument that should be rejected by this Court.

After examining the controlling legal authorities, this Court determines that Mr. Moore's allegations are more akin to plaintiffs' allegations in *Wallis*, *Safeblood*, *Bryan Career College*, and *Twinings*, not *M.S. Wholesale*.  Here, Mr. Moore's alleged damages are based solely upon an alleged diminution in value, not that the product was not at all what defendants represented.  *M.S.*

*Wholesale Plumbing, Inc.,* 2008 WL 90022, at *4. Mr. Moore received what he intended to purchase—a cooler. Mr. Moore acknowledged that he has been able to "use the cooler for cooler duties." (Dkt. 18, Exhibit B). The Court determines that this legal argument extends to Yeti. As a result, the Court determines that defendants, both the Mack Defendants and Yeti, are entitled to summary judgment on Mr. Moore's ADTPA claims on this basis.

### 2. Evidence Of Intent To Deceive Under False Advertising Provision Of ADTPA

The ADTPA false advertising provisions under which Mr. Moore sues defendants prohibit the following:

> (a)(1) [k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model;
>
> . . .
>
> (a)(3) [a]dvertising the goods or services with the intent not to sell them as advertised.

Ark. Code Ann. §§ 4-88-107(a)(1) and (3). These subsections "require that the defendant knowingly and intentionally engage in a deceptive trade practice." *Curtis Lumber Co. v. Louisiana Pac. Corp.*, 618 F.3d 762, 776 (8th Cir. 2010).

The Mack Defendants maintain that Mr. Moore has not, and cannot, present proof that the Mack Defendants knowingly and intentionally mislead him about the size and volume of the Yeti® cooler purchased because the record evidence demonstrates that the Mack Defendants did not independently determine the size and volume of the Yeti® coolers it sells (Dkt. No. 19, at 9). Rather, the record evidence establishes that the Mack Defendants used the product information provided by Yeti, the maker of the coolers. Further, the Mack Defendants point to record evidence

that establishes they had no knowledge that the product information provided by Yeti was inaccurate and, therefore, could not have intended to mislead consumers (Dkt. No. 19, at 9).

The Mack Defendants also contend that the undisputed record evidence demonstrates that information available on Mack's website included the specific dimensions of each cooler, which are undisputedly correct (Dkt. No. 18, Exhibit B). They argue that, if they had known the cooler volume description was incorrect, it would have been illogical for them to provide information containing accurate dimensions for each cooler so that any purchaser could independently and easily determine the exact volume of the cooler (Dkt. No. 19, at 9-10).

Mr. Moore seems to argue that the claims he asserts do not require knowing or intentional deception, arguing that neither provision on its face requires an intent to deceive or knowledge that a representation is false. In an effort to bolster this argument, Mr. Moore claims that the Arkansas legislature intended to proscribe more than traditional fraud when it used the term "deceptive act or practice" in the ADTPA catch-all provision. *See* Ark. Code Ann. § 4-88-107(a)(10) (proscribing other "unconscionable, false, or deceptive act or practice in business, commerce, or trade"). Mr. Moore contends that "deceptive act or practice" is not defined in any Arkansas statute, regulation, or opinion. Therefore, he directs the Court to other states' interpretations of deceptive trade practices cases and claims that these cases hold a defendant's good faith is immaterial to whether a "deceptive act" has occurred (Dkt. No. 30, at 12). He urges a definition that trade practices are deceptive if they are likely to deceive or have a capacity to deceive a reasonable consumer. *Id.* at 12-13 (citing *Black's Law Dictionary*, 435 (8th ed. 2004) (defining "deceptive act" "as defined by the [FTC] and most state statutes, conduct that is likely to deceive a consumer acting reasonably under similar circumstances.")).

He also contends that the Arkansas Supreme Court has recognized "the legislature's remedial purpose" in enacting the ADTPA and that a "liberal construction of the [A]DPTA is appropriate." (Dkt. No. 30, at 13) (citing *Arkansas ex rel. Bryant v. R&A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999)). Liberal construction, according to Mr. Moore, means that the ADTPA should protect consumers from trade practices beyond common law fraud. In support, Mr. Moore points to Arkansas Code Annotated § 4-88-107(b) that provides "[t]he deceptive and unconscionable trade practices listed in this section are in addition to and do not limit the type of unfair trade practices actionable at common law or under other statutes of this state."

The Mack Defendants counter that these arguments are belied by the unambiguous language of the applicable provisions of the ADTPA and maintain that the catch-all provision of the ADTPA cited by Mr. Moore does not apply here. The conduct the ADTPA's catch-all provision proscribes is conduct other than the specific conduct covered in subsections (a)(1) through (a)(9) and (a)(11). Mr. Moore's claim is one of false advertising, as described in subsections (a)(1) and (a)(3) of the ADTPA.

In the alternative, Mr. Moore maintains that, even if there is an intent requirement, there is sufficient record evidence to get to a jury on the issue of intent. He contends that, in *Curtis Lumber*, the court determined that, to satisfy this element, plaintiff was not required to put forth "direct evidence or positive testimony" of fraud. 618 F.3d at 773–74 ("Circumstantial evidence can provide a basis for the jury to infer fraud where. . . the circumstances are inconsistent with honest intent." (quoting *Stine v. Sanders*, 987 S.W.2d 289, 293 n.3 (Ark. Ct. App. 1999))); *see also Receivables Purchasing Co. v. Eng'g & Prof'l Servs., Inc.*, 510 F.3d 840, 844 (8th Cir. 2008). Mr. Moore contends that intent is a question of fact that should be left for the jury, especially with the record evidence before this Court (Dkt. No. 30, at 14-15). Mr. Moore points to the following

evidence. He contends that, although the Mack Defendants included the actual dimensions on the website, they advertised the Yeti® 45 Quart Tundra® Cooler on the website; represented it as a "Yeti® 45 Quart Tundra Cooler" in its Product Description; and stated on the website as the first item under "Yeti® 45 Quart Tundra Cooler Features" a section titled "45 Quart." He claims the Mack Defendants showed a cooler in Mr. Moore's website cart as "Yeti® 45 Quart Tundra cooler, item Number YETYT 45 TAN" and provided an invoice after the purchase that represented the cooler as "Yeti® 45 Quart Tundra cooler, Item number YETYT 45 TAN." Mr. Moore also claims that, even when a consumer looks at the dimensions chart, the Mack Defendants again represented the "size" in quarts for the dimensions listed, including the size in quarts beside each cooler's dimensions in the catalogs.

Mr. Moore maintains that, as a result of this record evidence, it is undisputed that the Mack Defendants intended to advertise, and did advertise, the Yeti® Tundra® 45 cooler as the "Yeti® 45 Quart Tundra cooler" and that the Mack Defendants intended to sell, and did sell, Mr. Moore a 45 quart cooler that only held 37.6 quarts. Further, he claims that, based on the record evidence, it is undisputed that the Mack Defendants knew that they were inaccurately advertising the volume on Yeti® coolers and intentionally made the statements. He claims the Mack Defendants intentionally made these statements, even though they were an authorized dealer of Yeti® coolers in possession of all measurements necessary to determine the actual volume of the Yeti® coolers misrepresented. Mr. Moore argues that, if as the Mack Defendants contend he could have performed calculations with this information to determine the correct volume, the Mack Defendants could have made this simple mathematical calculation for the Yeti® coolers they advertised and sold to Mr. Moore and other Arkansas consumers or, at a minimum, that is a question of fact for the jury (Dkt. No. 30, at 14).

In *Curtis Lumber*, the court determined that plaintiff was required to demonstrate scienter, meaning that defendant "made a material false statement knowing that it was false at the time made." *Curtis Lumber*, 618 F.3d at 773 (quoting *McAnally v. Gildersleeve,* 16 F.3d 1493, 1497 (8th Cir. 1994); *see also South County, Inc. v. First W. Loan Co.,* 871 S.W.2d 325, 326 (Ark. 1994) ("Proof of a mere naked falsehood or representation is not enough even though the complaining party relied on it and sustained damages, but, in addition thereto, the false statement must have been knowingly or intentionally made.") (quotation omitted)). As Mr. Moore points out, the court determined that, to satisfy this element, plaintiff Curtis Lumber was not required to put forth "direct evidence or positive testimony" of fraud. *Id.* (quoting *Receivables Purchasing Co., Inc.,* 510 F.3d at 844). However, the court explained that, even with circumstantial evidence, "the circumstances must be so strong and well connected as to clearly show fraud." *Id.* (quoting *Allred v. Demuth,* 890 S.W.2d 578, 580 (Ark. 1994)).

The court determined that evidence of scienter was "lacking" because Curtis Lumber had not identified "any unusual or suspicious conduct or circumstances surrounding [the alleged] statements from which [the court] could reasonably infer a fraudulent state of mind." *Id.* Specifically, the court determined that defendant had consistently maintained its interpretation of the rebate promotion at issue and had not engaged in contradictions. *Id.* Further, the court rejected Curtis Lumber's argument that defendant's "knowledge of a false statement c[ould] be inferred from [ ] testimony that (1) [defendant] intended retailers and customers to rely on the rebate program documents, (2) [defendant] intended to include a proof-of-use requirement in the rebate program, and (3) that the rebate program documents [were] incomplete because they did not specify the requirement that rebate applicants must install [certain] products by a certain date." *Id.*

at 773-74.  The court determined that, even construed in the light most favorable to Curtis Lumber,

these admissions in hindsight were insufficient.  The court reasoned:

> The mere admission of a misstatement is not enough to presume a fraudulent state
> of mind.  *See [Interstate Freeway Services, Inc. v.] Houser,* 835 S.W.2d [872,] 873
> [(Ark. 1992)] ("Fraud is never presumed, and must be affirmatively proved. . . .").
> At most, [defendant's] testimony supports an inference that the omission in the
> rebate documents was a product of an honest mistake, which is insufficient to prove
> fraud.  *See Morrill [v. Becton, Dickinson and Co.],* 747 F.2d [1217,] 1222 [(8th Cir.
> 1984)] (some of the defendant's misrepresentations could not be actionable fraud
> where the only evidence of scienter was testimony that the inaccuracies "were
> honest mistakes").  This testimony falls short of the elevated burden for proving
> fraud by circumstantial evidence.
>
> . . .
>
> In sum, Curtis Lumber has not presented evidence to shed light on [defendant's]
> state of mind *when it issued the rebate documents.*  As such, no reasonable fact-
> finder could conclude that [defendant] falsely represented the terms of the rebate
> promotion with knowledge of such falsity.

*Id.*

This Court concludes that, much like the evidence upon which Curtis Lumber relied, Mr.

Moore's record evidence falls short of the elevated burden for proving through circumstantial

evidence scienter or that the Mack Defendants made a material false statement knowing that it was

false at the time made as required by the ADTPA false advertising provision under which he sues.

The Court determines that, based on the record evidence and construing all reasonable inferences

in favor of Mr. Moore, no fact finder could conclude that the Mack Defendants made a material

false statement knowing it was false at the time it was made.  Therefore, the Mack Defendants are

granted summary judgment on Mr. Moore's ADTPA claims on this basis.  The Court does not find

that these same arguments extend to Yeti.  Therefore, the Court declines to grant summary

judgment to Yeti on this basis.

### 3. Reasonable Reliance Under False Advertising Provision Of ADTPA

The Mack Defendant also maintain that Mr. Moore has not, and cannot, prove that he reasonably relied on the alleged misrepresentation(s) in his purchasing decision. Under Arkansas law, "[p]roximate cause encompasses two distinct aspects: cause in fact and legal cause." *Ramthun v. Bryan Career Coll.-Inc.*, 93 F. Supp. 3d 1011, 1030 (W.D. Ark. 2015) (quoting *Ashley Cnty., Ark. v. Pfizer, Inc.,* 552 F.3d 659, 667 (8th Cir. 2009)). It appears to the Court that the proximate cause element in this case is coextensive with reliance. Reasonable reliance on the alleged false advertising is a necessary element of Mr. Moore's false advertising ADTPA claims. *See Ramthun*, 93 F. Supp.3d at 1030 (examining proximate cause and reasonable reliance under the ADTPA); *White v. Volkswagen Group of America, Inc.*, 2013 WL 685298, at *8 (W.D. Ark. Feb. 25, 2013) (dismissing plaintiff's ADTPA claims stating that plaintiff "may only claim a violation of the ADTPA, if she suffered some economic injury 'as a result' of her reliance on Defendant's allegedly false representations or advertisements.").

Mr. Moore contends that the text of the ADTPA makes no mention of reliance and that inserting reliance would be antagonistic to the consumer protection origins of the legislation, as well as the law's objective to eradicate unfair and deceptive trade practices, *See State ex. rel. Bryant v. R&A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999) (recognizing that the General Assembly enacted the ADTPA "to protect the interest of. . . the consumer public"); *Ark. Dep't of Human Servs. Div. of Econ. And Med. Serv. v. Walters*, 866 S.W.2d 823, 825 (Ark. 1993) (instructing that a "cardinal principle for construing" statues like the ADTPA is to "give appropriate regard to the spirit which promoted its enactment [and] the mischief sought to be abolished"). In support of this argument, Mr. Moore cites a string of cases from other jurisdictions. Mr. Moore also maintains

that adding a reliance element would run afoul of the "liberal construction" that is "appropriate." *State ex rel. Bryant*, 985 S.W.2d at 302.

The Court rejects Mr. Moore's arguments and determines that, under Arkansas law, reliance is an element of the false advertising claims he alleges under the ADTPA. Ark. Code Ann. § 4-88-113(f) (granting a right of recovery to "any person who suffers actual injury as a result of an offense or violation"); *see White,* 2013 WL 685298, at *7 (determining that, because plaintiff did not state she "relied on particular false representations *in making her decision to purchase the vehicle*," she could not proceed with her ADTPA claims); *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1084 (E.D. Ark. 2013) (same); *Whatley v. Recontrust Co. NA,* No. 3:10-CV-00242 JLH, 2010 WL 4916372, at *6 (E.D. Ark. Nov. 23, 2010) (dismissing plaintiff's claims because plaintiff failed to allege that defendant's "misrepresentations caused her to suffer any actual damages or explain the nature of those damages. . . ."). The reliance standard for misrepresentations by positive statement and ones by silence are slightly different under Arkansas law. *Erdman Co. v. Phoenix Land & Acquisition, LLC*, No. 2:10-CV-2045, 2013 WL 3776373, at *2 (W.D. Ark. July 17, 2013) (citing *Lane v. Midwest Bancshares Corp.,* 337 F. Supp. 1200, 1208 (E.D. Ark. 1972)). A party relying on misrepresentation-by-silence must show "that the ascertainment of the undisclosed fact was not within the reach of the [party]'s diligent attention or observation." *Erdman*, 2013 WL 3776373, at *2 (quoting *Brookside Village Mobile Homes v. Meyers,* 782 S.W.2d 365, 367 (Ark. 1990)).

The Mack Defendants maintain that Mr. Moore cannot demonstrate that he reasonably relied on the alleged misrepresentation in making his purchase for several reasons. First, the Mack Defendants disclaimed any "product specification inaccuracies." (Dkt. 18, Exhibit B ("Mack's Prairie Wings is not responsible for typographical errors in pricing or product specification

inaccuracies in our web site.")).  The Mack Defendants argue that, at a minimum, this language put Mr. Moore on notice that he could not, and should not, rely on Mack's for product specifications.  They contend that any reliance was not justified.  *See Barringer v. Hall*, 202 S.W.3d 568, 573 (Ark. Ct. App. 2005) (upholding jury verdict in favor of defendant on fraud claim brought by purchasers of a house partly on the basis that the jury could have found a lack of justifiable reliance based on disclaimers in sale documents).  Further, the Mack Defendants assert that the documents Mr. Moore claims to have reviewed prior to his purchase included the exact product dimensions of the Yeti® cooler he purchased and that, approximately three weeks before his online purchase, Mr. Moore claims to have accessed Yeti® product information on the website (Dkt. No. 18, Exhibit B).  The Mack Defendants state that it is undisputed the product information contained the dimensions of the cooler Mr. Moore purchased, as well as a diagram of those measurements in relation to the parts of the Yeti® cooler, and that Mr. Moore does not allege that those measurements were wrong.  Instead, Mr. Moore claims that the reference to the cooler being "45 Quart" is misleading.  The Mack Defendants assert that Mr. Moore had the means to determine the actual volume of the Yeti® cooler by making a simple calculation using the product dimensions available but did not do so.  They also assert that he ignored the actual product label affixed to his Yeti® cooler, which explicitly stated the capacity was 9.4 gallons, which equates to 37.6 quarts (Dkt. No. 18, Exhibit B).  For all of these reasons, the Mack Defendants contend Mr. Moore cannot satisfy his burden to demonstrate reasonable reliance.

Regardless of these points, this Court determines that the Mack Defendants are entitled to summary judgment on Mr. Moore's ADTPA claims because, as they point out, Mr. Moore does not contend and more importantly offers no record evidence that the alleged false advertisements caused him to purchase the Yeti® cooler or that he would not have purchased the cooler had he

known it only held 37.6 quarts. The Court determines that absence of this proof is fatal to his ADTPA claims. The Court also determines that this argument extends to Yeti. Because there is no allegation or record evidence to support this essential element of Mr. Moore's ADTPA claims, the Court determines that the Mack Defendants and Yeti are entitled to summary judgment on Mr. Moore's ADTPA claims on this basis, as well.

### 4.      "Catch-All" Provision Of The ADTPA

Mr. Moore cites the same conduct and alleges that it also violates the catch-all provision of the ADTPA. The Court determines that, based on his allegations, the catch-all provision is not a viable path for Mr. Moore to bring an ADTPA claim. Arkansas Code Annotated §§ 4-88-107(a)(1) and (3) expressly prohibit conduct that constitutes false advertising. Mr. Moore's claims against defendants are based on allegations of false advertising. The catch-all provision, by its terms, prohibits conduct different than that addressed by subsections (a)(1) and (a)(3) of the ADTPA.

The catch-all provision states that it prohibits "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10). The language of the catch-all provision is not ambiguous. The Court gives the word "other" its "ordinary and usually accepted meaning in the common language." *Cave City Nursing Home, Inc. v. Ark. Dept. of Human Servs.*, 89 S.W.3d 884, 889 (Ark. 2002). It applies to conduct other than conduct identified in subsections (a)(1) through (a)(9) and (a)(11) of the ADTPA. The ADTPA must be construed to mean what is says. *See, e.g., Universal Cooperatives, Inc. v. AAC Flying Service, Inc.*, 710 F.3d 790, 795 (8th Cir. 2013) (using rule of statutory construction that ordinary meaning of language must be used and finding, based on that rule, that "unconscionable,

false, or deceptive" language of the catch-all provision of the ADTPA is not a general reference to any unlawful conduct).

As explained in this Order, this Court concludes that intent is an element of a claim for violation of the false advertising provision of the ADTPA, *Curtis Lumber Co. v. Louisiana Pac. Corp.*, 618 F.3d 762, 776 (8th Cir. 2010), and that justifiable reliance on the purportedly false advertising is required to succeed on the claim, *White v. Volkswagen Group of America, Inc.*, 2013 WL 685298, at *7 (W.D. Ark. Feb. 25, 2013). It is less clear whether these elements are required in an ADTPA claim brought under the catch-all provision. *See Philip Morris Co. v. Miner*, 462 S.W.3d 313, 320 (Ark. 2015); *Erdman Company v. Phoenix Land & Acquisition, LLC*, 2013 WL 3776373, at *4-5 (W.D. Ark. July 17, 2013). Allowing the catch-all provision to apply to conduct that equates to false advertising may create different standards of proof under the same statute applicable to the same conduct. The Court will not read this Arkansas law to produce that result.

The only conduct about which Mr. Moore complains is defendants' alleged misrepresentation in the advertising of the volume of the Yeti® cooler. There is no "other" unconscionable, false, or deceptive act or conduct alleged by Mr. Moore, and he has supplied no record evidence to support "other" conduct. For these reasons, the Court concludes that, as a matter of law, Mr. Moore may not maintain a claim under the catch-all provision of the ADTPA. The Court determines that this argument extends to Yeti, as well. Therefore, the Court grants summary judgment in favor of the Mack Defendants and Yeti on Mr. Moore's catch-all ADTPA claim.[1]

---

[1] Because the Court concludes that the acts Mr. Moore alleges are not subject to a claim under the catch-all provision of the ADTPA, the Court declines to address the Mack Defendants' argument that, even if a catch-all ADTPA claim existed on these facts, Mr. Moore could not succeed on such a claim due to lack of causation or reasonable reliance allegations or record evidence (Dkt. No. 19, at 16-17).

### 5.     Injunctive Relief Under The ADTPA

Mr. Moore, as a private litigant, may not maintain an action under the ADTPA for injunctive relief.  The ADTPA provides that "the Attorney General of this state shall have authority, acting through the Consumer Counsel, to file an action in the court designated in § 4-88-112 for civil enforcement of the provisions of this chapter, including, but not limited to, the seeking of restitution and the seeking of an injunction prohibiting any person from engaging in any deceptive or unlawful practice prohibited by this chapter."  Ark. Code Ann. § 4-88-104.  "[T]he plain language of the ADTPA does not provide for a private cause of action seeking injunctive relief."  *Baptist Health v. Murphy*, 373 S.W.3d 269, 288 (Ark. 2010).  The Mack Defendants and Yeti are entitled to summary judgment in their favor on Mr. Moore's ADTPA claim seeking injunctive relief (Count III).

### B.     Common Law Fraud And Deceit

Common law fraud or deceit under Arkansas law requires that a plaintiff show that:  (1) he has sustained damages; (2) a false representation of material fact was made by the defendant; (3) the defendant knew that the representation was false; (4) the defendant intended to induce the plaintiff to act in reliance upon the representation; and (5) the plaintiff justifiably relied upon the representation in acting and as a result sustained damages.  Ark. Model Jury Instr.—Civ. 402; *Knight v. Day,* 36 S.W.3d 300, 302–03 (Ark. 2001).  For an omission of material fact to be equivalent to a false representation of material fact, a plaintiff must show that the defendant had a duty to disclose the material fact.  *Bridges v. United Sav. Ass'n,* 438 S.W.2d 303, 306 (Ark. 1969) (citing 37 C.J.S. Fraud §§ 15, 16).

Liability for constructive fraud requires a plaintiff to show by a preponderance of the evidence that:  (1) a legal or equitable duty existed between the plaintiff and the defendant; (2) the

defendant made a material misrepresentation of fact; (3) the misrepresentation was a breach of the duty owed to the plaintiff; (4) the misrepresentation was of a type considered fraudulent because of its tendency to deceive others; (5) the plaintiff justifiably relied on the misrepresentation; and (6) the plaintiff was harmed as a result of the reliance. *Knight,* 36 S.W.3d at 303; *Roach v. Concord Boat Corp.,* 880 S.W.2d 305, 307 (Ark. 1994) ("The year model of the boat was misrepresented to appellant which amounts to a material misrepresentation upon which appellant justifiably relied to his detriment. In the absence of intentional wrongdoing, this amounts to constructive fraud, which was proved by a preponderance of the evidence." (internal citation omitted)).

This type of claim requires as an element justifiable reliance on the part of plaintiff. For the reasons explained in this Order, Mr. Moore fails to allege or present record evidence of reasonable reliance sufficient to survive summary judgment on this claim. For this reason, the Mack Defendants and Yeti are entitled to summary judgment on Mr. Moore's common law fraud or deceit claim.

### C. Negligence And Gross Negligence Claim

Mr. Moore's negligence and gross negligence claim is premised on the alleged misrepresentation of the Yeti cooler volume (Dkt. No. 2, ¶¶ 50-51). Mr. Moore asserts a claim for negligent misrepresentation. The Supreme Court of Arkansas has made clear that this type of claim is not recognized under Arkansas law. *South County, Inc. v. First Western Loan Co.*, 871 S.W.2d 325 (Ark. 1994). This Court declines to recognize such a claim under Arkansas law. For this reason, the Mack Defendants and Yeti are entitled to summary judgment on Mr. Moore's claim of negligence and gross negligence.

### D.    Unjust Enrichment And Request For Constructive Trust

Under Arkansas law, an unjust enrichment claim requires proof that the defendant received something of value to which he or she is not entitled and which he or she must restore. *DePriest v. AstraZeneca Pharmaceuticals, L.P.*, 351 S.W.3d 168 (Ark. 2009). This theory often is used as a contractual theory when there is no written contract; the existence of an express contract bars a claim of unjust enrichment. *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 210 S.W.3d 101, 112 (Ark. 2005). "There must also be some operative act, intent, or situation to make the enrichment unjust and compensable." *Indep. Cty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 891 (E.D. Ark. 2008), *aff'd sub nom. Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Hatchell v. Wren*, 211 S.W.3d 516, 522 (Ark. 2005). A party who is free from fault cannot have been unjustly enriched only because he chose to exercise a legal right. *Pfizer*, 534 F. Supp. 2d at 891 (citing *Hatchell,* 211 S.W.3d at 522).

A constructive trust is a remedy similar to unjust enrichment, but it is not a separate cause of action under Arkansas law. *See, e.g., Jackson v. Smith*, 380 S.W.3d 443, 453 (Ark. Ct. App. 2010) ("The remedy of constructive trust is available, therefore, if appellant prevails on any of her causes of action remanded for trial."). It is the imposition of a trust over monies obtained to which defendant is not entitled.

The Mack Defendants contend that they are entitled to summary judgment on Mr. Moore's unjust enrichment claim because the Mack Defendants did not receive anything of value to which they were not entitled. They maintain the undisputed evidence is that Mr. Moore paid the market price for the Yeti® cooler he received, regardless of whether the cooler was 45 or 37.6 quarts, as Yeti set the price (Dkt. No. 18, Exhibit A). It is undisputed that Mr. Moore did not return the Yeti® cooler to Mack's or exchange it for a larger capacity cooler (Dkt. No. 18, Exhibit B

(explaining Mack's return policy)).  Instead, Mr. Moore kept the cooler and continues to use it.
The Court concludes that, on the undisputed facts, Mr. Moore cannot succeed on his unjust
enrichment claim.  The Mack Defendants and Yeti are entitled to summary judgment in their favor
on Mr. Moore's unjust enrichment claim.

**E.**        **Breach Of Contract**

To prevail on a breach of contract claim under Arkansas law, a plaintiff must show that:
(1) the plaintiff and defendant had a contract; (2) the contract required the defendant to perform a
certain act; (3) the plaintiff did what the contract required; (4) the defendant did not do what the
contract required; and (5) the plaintiff was damaged by the breach.  *Foreman Sch. Dist. No. 25 v.
Steele,* 61 S.W.3d 801, 807 (Ark. 2001) ("A person may be liable for breach of contract if the
complaining party can prove the existence of an agreement, breach of the agreement, and resulting
damages."); Ark. Model Jury Instr.—Civ. 2401.  Mr. Moore relies on a product advertisement—
one he alleges was false—as the basis for his breach of contract claim.  The Mack Defendants
assert that, under Arkansas law, there is no authority that a product advertisement constitutes a
contractual promise.  *See, e.g., DePriest v. AstraZeneca Pharmaceuticals, L.P.*, 351 S.W.3d 168,
180 (Ark. 2009) (determining that plaintiffs cited no authority that a product advertisement
constituted a quasi-contractual promise so as to maintain a breach of contract claim).  Therefore,
they contend they are entitled to summary judgment as a matter of law on Mr. Moore's breach of
contract claim.  Mr. Moore cites no authority to counter this.

Given the controlling law, the Court grants summary judgment to the Mack Defendants
and Yeti on Mr. Moore's breach of contract claim.

### F. Warranty Claims

On June 23, 2016, Mr. Moore amended his state court complaint to add claims of breach of express warranties, breach of the implied warranty of merchantability, and breach of the implied warranty to conform with usage of trade (Dkt. No. 1, at 38-40). This amended complaint was filed in this Court July 26, 2017 (Dkt. No. 2). The Mack Defendants did not address these warranty claims in their motion for summary judgment (Dkt. No. 18), but they do brief the issue of summary judgment on these claims in their reply (Dkt. No. 31). By this Order, the Court directs Mr. Moore to respond to the Mack Defendants arguments regarding his warranty claims within 14 days from the entry of this Order. The Mack Defendants will then have 7 days from Mr. Moore's filing of his response to file a reply, should they choose to do so. If appropriate, the Yeti defendants may move to join in this portion of the motion, and Mr. Moore may timely respond to that request.

### IV. Conclusion

For the foregoing reasons, the Court grants summary judgment to the Mack Defendants and Yeti on Mr. Moore's ADTPA claims (Counts I and III), common law fraud or deceit claim (Count II), negligence and gross negligence claim (Count VI), unjust enrichment claim (Count IV), request for a constructive trust (Count V), and breach of contract claim (Count VII). The Court directs further briefing on Mr. Moore's breach of warranty claims consistent with the terms of this Order.

It is so ordered this, the 29th day of September 2017.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge